IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| LENN KEITH WILLIAN,<br>  Petitioner, | §<br>§<br>§ | |
| V. | § | A-06-CA-605-SS |
| | § | |
| NATHANIEL QUARTERMAN, Director,<br>Texas Dept. of<br>Criminal Justice-Correctional<br>Institutions Division,<br>  Respondent. | §<br>§<br>§<br>§<br>§ | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

To: The Honorable Sam Sparks, United States District Judge

  The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

  Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 24); Petitioner's response thereto (Document 27); Petitioner's amended application (Document 28); Respondent's response to amendment (Document 31); and Petitioner's response thereto (Document 34). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 299th Judicial District Court of Travis County, Texas in cause number 9034084 (arson).  Petitioner was originally convicted of burglary of a habitation with intent to commit arson and committing arson under § 30.02(a)(1), (d) of the Texas Penal Code and arson under § 28.02(a)(2), (d)(2) of the Texas Penal Code.  The trial court found that Petitioner had been previously convicted in 1995 of attempted burglary of a habitation in Tom Green County, as alleged in the indictment, and assessed punishment in each case at confinement in prison for 25 years.

On appeal the State confessed error, stating the Double Jeopardy Clause of the Fifth Amendment had been violated because Petitioner had been subjected to multiple punishments.  Accordingly, the appellate court ordered that the arson conviction be retained and the burglary conviction be vacated and dismissed.  Willian v. State, Nos. 03-03-00681-CR and 03-03-00686-CR, 2005 WL 1991787 (Tex. App. – Austin Aug. 17, 2005).  Petitioner did not file a petition for discretionary review.

Petitioner also challenged his conviction in a state application for habeas corpus relief.  Petitioner filed his first application on November 29, 2005, but it was dismissed on February 1, 2006, because Petitioner's direct appeal was still pending.  Ex parte Willian, Appl. No. 63,899-01.  On February 21, 2006, Petitioner resubmitted his state writ, incorporating the same claims by reference to his earlier filed application and memorandum.  Ex parte Willian, Appl. No. 63,899-02.  On May 24, 2006, Petitioner's state application was denied without written order.

B.     **Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Robert Ming, a city of Pflugerville firefighter, arrived at 1720 Wells Branch Parkway in the early morning hours of November 30, 2002. Going to the second floor apartment, Ming found the door had been opened by a sheriff's deputy. Smoke filled the apartment, and the visibility was poor. The in-house sprinklers had extinguished the fire. Thermal imaging showed a "hot spot" on a couch indicating the origin of the fire. There was damage to the couch, and the ceiling was charred because of the heat.
>
> Dennis Haas, a Travis County Fire Marshal, arrived at the scene about 3:30 a.m. The fire was out and it had been confined to the couch and a small area of the carpet inside the apartment. Haas, qualified as an expert, opined that the fire had been started on the back of the couch and was not accidental. An empty bottle of vegetable oil was found on the couch, which Haas believed was the accelerant. A burnt match and matchbook were found near the patio entry. Haas believed the match was the source of the fire. A rear window in the apartment had a "very round" hole in it consistent with an impact type fracture. Most of the window glass fell inside the apartment. The window had been unlocked and entry into the apartment had been obtained from the balcony patio.
>
> Later Haas took written statements from Gena Boswell, whose habitation was involved, and from Marvina Birdwell, appellant's sister. On December 1, 2002, Boswell gave Haas a number of items which had been taken from her apartment and later found approximately 100 yards behind the apartment "buried in plain sight." One of the items was a round marble ash tray, which had been on the balcony patio and could have been used to break the window.
>
> The ashtray and other items were not checked for fingerprints. Several bottles failed to reveal useable prints. The spot of blood found on the patio was not tested. The items discovered outside appeared to have been handled by a number of individuals after the fire. Haas learned that appellant had once lived in the apartment and finding his preserved fingerprints might have proven meaningless.
>
> Gena Boswell testified that she began an intimate relationship with appellant in July 2000. About two years later they moved to 1720 Wells Branch Parkway, residing first in a ground floor apartment and then moving to the second floor apartment. They separated in October 2002. Boswell continued to live in the apartment. Appellant sought unsuccessfully to reconcile later in October. Appellant called

3

Boswell again in early November and demanded "half of the couch and half of the stuff" as it belonged to him. Boswell refused because she had made a majority of the payments on the items. Appellant called again and threatened her with court action over the property.

Late in November 2002, Boswell locked and secured the apartment. She did not set the burglar alarm. The ashtray was on the balcony patio. Boswell left to spend Thanksgiving in Houston with her family. On December 1, 2002, she observed that appellant had called her on her cell phone at 2:30 a.m. but left no message. She had a "feeling" the apartment had been set on fire. She later received a telephone message from a State Trooper that there had been a fire in her apartment.

Boswell returned home that day and found the couch burned and that someone had taken her bottle of bleach and poured it over her clothes leaving white spots. She discovered a number of items missing from her apartment including the ashtray, a cell phone bill, birth control pills, a TV remote control, a portable phone, DVD movies, an answering machine, a picture album, and a half-full bottle of wine taken from the refrigerator. Later these items and others were found in a ditch behind the apartment. The wine bottle was empty and her steak knife was "stabbed into the ground." She also found her jewelry boxes in the ditch. Boswell gave a written statement to Haas.

Marvina Birdwell, appellant's sister, testified that about 2 a.m. on November 30, 2002, she was awakened by a phone call from appellant; that he asked to be picked up; and that he was north of where she lived. In response to Birdwell's questions, appellant stated that he was at Boswell's place, had taken what was his, and had "torched the place." Birdwell started to get dressed, but called appellant and told him that she would not pick him up. She then called 911 and reported the fire.

On cross-examination by appellant's trial counsel, Birdwell admitted that it had been a long day and that she was tired and asleep when appellant telephoned. She described appellant as upset, screaming "something" about the apartment being on fire and about his stuff. She admitted this was different than her "torched" language used earlier on direct examination. Birdwell explained that when she gave a written statement to Haas, he told her that he "had the goods on appellant." Birdwell stated that it was Haas who attributed to appellant using the specific terms, "I torched the place and took my stuff out."

Willian v. State, Nos. 03-03-00681-CR, 03-03-00686-CR, 2005 WL 1991787 at *2-4 (Tex. App. – Austin Aug. 17, 2005). At Petitioner's motion for new trial hearing, trial counsel, the trial

4

prosecutor, Petitioner's sister Birdwell, and Petitioner's brother, Bruce Willian, testified. The appellate court described the testimony as follows:

> Appellant introduced probationary condition 21 from a prior conviction for retaliation ordering a psychological examination, and the resulting report of Dr. Ferrera of August 1994 reflecting appellant had "borderline personality disorder." The report did not reflect a finding of a bipolar mental disorder. The Travis County jail medical records for appellant from the time of his arrest until trial were introduced into evidence.
>
> At the hearing, Bruce Willian, who had not testified at trial, related that on November 29, 2002, appellant telephoned him from Barney's Bar and that he joined appellant there about 6 p.m. Appellant was drinking rum but began drinking beer when Bruce arrived. Later in the evening, appellant and Bruce and friends moved to the Canary Roost Bar where they continued to consume alcoholic beverages. Bruce explained that appellant was depressed because he had broken up with his girlfriend, lost his job, and had his car repossessed that day. Bruce reported that appellant left the last bar on foot about 1 a.m. on November 30, 2002, before the commission of the alleged arson offense.
>
> Marvina Birdwell, the sister, testified at the hearing, this time for appellant. Without giving her educational background, Birdwell stated that she had worked at the Austin State Hospital for twelve years and had sixty hours of training each year. She related that she was a certified health care professional. She was not a psychiatrist or a psychologist and had not cared for or treated appellant. She was permitted to testify that appellant had been diagnosed as being a "borderline personality," suffering from a bipolar disorder along with a schizo-affective disorder. It was her opinion that bipolarism alone could lead to psychotic episodes where the individual would not understand the difference between right and wrong. Birdwell stated that appellant knew that he had these mental illnesses but did not take any medication when not confined, but self-medicated with alcohol. She stated that appellant was an alcoholic and that on some days he drank a twelve-pack of beer and a fifth of rum. Her knowledge of appellant's condition and acts came as a result of family relationships. There was no showing that appellant had been found by any medical expert not to know the difference between right and wrong. Birdwell agreed that if a doctor said appellant knew the difference between right and wrong, she would not dispute it. Birdwell stated that their mother had a nervous breakdown and burned a house and that their father was an alcoholic.
>
> At the hearing on the motion for new trial, appellant's counsel on appeal attempted to get Birdwell to clarify her trial testimony about appellant's telephone call in the early morning hours of November 30, 2002. Birdwell admitted that she was drunk

>when she went to bed at midnight and was in a deep sleep when appellant called. She did not change her trial testimony about their conversation.

Id. at *4-5.

### C. Petitioner's Grounds for Relief

Petitioner raises the following grounds for relief:

1. He was denied the right to counsel, because counsel was appointed after he had been transferred to TDCJ-CID on a revocation of mandatory supervision, he was returned to Travis County three days before trial and met his attorney the day his trial began;

2. He was denied effective assistance of counsel because counsel: (a) failed to interview Marvina Birdwell; (b) failed to effectively cross-examine Marvina Birdwell; (c) failed to interview any potential witnesses, namely Petitioner's brother Bruce; (d) failed to fully investigate the case and Petitioner's mental illnesses; (e) failed to assert any defense strategy or mitigating evidence; (f) failed to object to the state prosecutor's improper comment during closing argument that Petitioner's mental illness is not a defense because it was not in the charge; and (g) failed to argue that the convictions constituted double jeopardy; and

3. The state failed to disclose favorable evidence; specifically, the state did not inform defense counsel that Petitioner was heavily medicated and held in the psychiatric ward at the Travis County Jail, he was transferred to TDCJ-CID after he had been indicted and was then returned to Travis County days before the trial.

### D. Exhaustion of State Court Remedies

Respondent does not contest that Petitioner has exhausted his state court remedies regarding most of his claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings with the exception of Petitioner's claim that his attorney was ineffective for failing to object to the prosecutor's alleged improper comment during closing argument. Respondent does not move to dismiss Petitioner's application for habeas corpus relief. Rather, Respondent argues the unexhausted claim is procedurally barred.

## DISCUSSION AND ANALYSIS

A.   **The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

>identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Unexhausted Claim**

Petitioner has not exhausted his claim that his attorney was ineffective for failing to object to the prosecutor's alleged improper comment during closing argument. Petitioner's unexhausted claim is procedurally barred. A subsequent state application for habeas corpus on Petitioner's unexhausted issue would be futile as it would be denied pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 as an abuse of the writ. When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief. Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally

barred. Coleman, 501 U.S. at 735, 111 S. Ct. at 2557. The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. Id. at n.1. However, a petitioner can still obtain federal habeas review on a claim denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996), citing Coleman, 501 U.S. at 750, 111 S. Ct. 2565, cert. denied, 519 U.S. 1093, 117 S. Ct. 773 (1997).

Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claim would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his unexhausted claim.

**C.     Denial of Counsel**

Petitioner contends he was constructively denied counsel when he was incarcerated for four months before counsel was ever appointed, was returned to the Travis County Jail three days before trial and only met his attorney on the day his trial began. Under Cronic Petitioner argues he is not required to show prejudice. United States v. Cronic, 466 U.S. 648 (1984).

The general rule of Cronic is that if a criminal defendant is denied counsel at a "critical stage" of the proceedings, then the trial is presumed to be so fundamentally unfair that habeas relief is mandated without any showing of actual prejudice. 466 U.S. at 658. Cronic was handed down at the same time as the Supreme Court's seminal case on effective assistance of counsel, Strickland v. Washington, 466 U.S. 668 (1984), and is an out-growth or corollary of the rule adopted in

9

Strickland. Strickland announced that a defense lawyer's ineffectiveness will not result in the reversal of a conviction unless the lawyer both performed deficiently, and that deficient performance resulted in actual prejudice to the defendant. Cronic recognized that in some situations, where the defendant is denied counsel entirely, or where counsel's performance is so deficient as to amount to no counsel at all, the defendant need not show prejudice to receive relief. This is because these circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular trial is unjustified." Cronic, 466 U.S. at 658.

In Bell v. Cone, 535 U.S. 685, 695-96, 122 S. Ct. 1843, 1851 (2002), the Supreme Court reiterated that the second exception to the requirement of Strickland "prejudice" it had envisioned in Cronic was limited to situations in which defense counsel completely failed to subject the prosecution's case to meaningful adversarial testing. See Bell v. Cone, 535 U.S. at 697-98, 122 S. Ct. at 1851-52 (holding complaints about trial counsel's waiver of closing argument at the punishment phase of trial and failure to adduce mitigating evidence insufficient to create a presumption of prejudice absent a showing trial counsel completely failed to challenge the prosecution's case throughout the sentencing proceeding).

The presumption of prejudice recognized in Cronic does not apply where the defendant complains of merely shoddy or poor performance by his trial counsel; for a defendant to be entitled to such a presumption, his attorney's failure must be complete. See Bell v. Cone, 535 U.S. at 697, 122 S. Ct. at 1851 (holding the presumption applicable only when counsel entirely failed to subject the prosecution's case to meaningful adversarial testing); United States v. Griffin, 324 F.3d 330, 364, 364 (5th Cir. 2003) ("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the per se

presumption of prejudice."); Riddle v. Cockrell, 288 F.3d 713, 718 (5th Cir. 2002) (holding "constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense), cert. denied, 537 U.S. 953 (2002); Mayo v. Cockrell, 287 F.3d 336, 340 n. 3 (5th Cir. 2002) (holding the same), cert. denied, 537 U.S. 975 (2002); Burdine v. Johnson, 262 F .3d 336, 344 n. 4 (5th Cir. 2001) (holding the same), cert. denied, 535 U.S. 1120 (2002); Gochicoa v. Johnson, 238 F.3d 278, 284 (5th Cir. 2000) (" 'A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.' We have found constructive denial in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense; and have stated that constructive denial will be found when counsel fails to subject the prosecution's case to any meaningful adversarial testing." (citations and footnote omitted)).

     Petitioner's allegations do not fall within the narrow scope of the presumed prejudice rule announced in Cronic. As explained by Respondent, Petitioner was on mandatory supervision at the time he committed the arson in question. His mandatory supervision was revoked on January 27, 2003, based on the arson and burglary charges, and he was returned to TDCJ-CID prior to his trial. Petitioner admits counsel was appointed on April 10, 2003, the same day of his re-indictment and over three months before trial. Petitioner denies counsel's statement made at the motion for new trial hearing where counsel stated he met with Petitioner "half a dozen times before trial." MNT at 18-19. Although Petitioner states he did not personally meet his attorney until the day of trial, the record is clear Petitioner was not without counsel prior to this time. Accordingly, the state court records

do not reflect Petitioner was constructively denied counsel. As such, the remainder of his claims regarding ineffective assistance of counsel will be analyzed pursuant to the Strickland standard.

**D.      Ineffective Assistance of Counsel**

In his next ground for relief, Petitioner argues that he was denied effective assistance of counsel. Specifically, he claims his trial counsel: (1) failed to interview Birdwell; (2) failed to effectively cross-examine Birdwell; (3) failed to interview any potential witnesses, namely Petitioner's brother; (4) failed to fully investigate the case and Petitioner's mental illnesses; (5) failed to assert any defense strategy or mitigating evidence; and (6) failed to argue that his convictions constituted double jeopardy.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the

difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted).  Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

    1.    <u>Birdwell</u>

Petitioner complains his attorney failed to interview and effectively cross-examine his sister, Marvina Birdwell.  As pointed out by Respondent, counsel was able to get Birdwell to admit on the stand that she was tired and still asleep when she received the phone call from Petitioner, and that the statement she claimed Petitioner made was not as she originally stated on direct examination. 4 SF 238, 242-45.  As noted by the appellate court:

> On cross-examination of the sister, counsel tried to blunt her testimony for the State by eliciting evidence that she had used on direct examination the fire marshal's terminology in describing [Petitioner's] telephone call.  She admitted that she had been asleep when an upset [Petitioner] telephoned early on November 30, 2002, and that [Petitioner] probably did not use the word "torched."

<u>Willian v. State</u>, Nos. 03-03-00681-CR and 03-03-00686-CR, 2005 WL 1991787 at *12(Tex. App. – Austin Aug. 17, 2005).

Petitioner asserts had counsel interviewed Birdwell prior to trial, he would have discovered she was drunk at the time she received Petitioner's call.  Petitioner contends a reasonable person

13

could deduce that an intoxicated woman who is woke from a drunken sleep to hear someone screaming into a phone would be less credible than the image painted of Birdwell at trial. As noted by the appellate court, counsel's reasons for not interviewing Birdwell prior to trial were not developed at the motion for new trial hearing. Nevertheless, the appellate court concluded that Petitioner had failed to establish the two-pronged standard of Strickland.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Had Birdwell admitted she had been drunk on the night she received Petitioner's call, the outcome of Petitioner's trial would not have changed. Counsel had already discredited Birdwell's testimony and the additional fact that Birdwell had been drinking the night in question would not have added much to the discredit.

2.   Bruce Willian

Petitioner complains his attorney failed to interview potential witnesses, namely Petitioner's brother Bruce, and call him as a witness. Petitioner asserts Bruce was with Petitioner hours before the fire started. Petitioner contends his brother could have testified as to Petitioner's condition and demeanor, including that Petitioner was intoxicated. Petitioner believes this information could have swayed the jury to believe that it would be highly improbable that Petitioner could have scaled a smooth stucco wall that was estimated at approximately 14 feet to the second story apartment.

The court of appeals considered Petitioner's claim of ineffective assistance of counsel. Willian v. State, Nos. 03-03-00681-CR and 03-03-00686-CR, 2005 WL 1991787 at *13 (Tex. App. – Austin Aug. 17, 2005). The court noted there was no showing that Bruce was available at trial. In addition, the court found that Bruce's testimony would not have benefitted Petitioner. Id. The

court explained that Bruce testified at the motion for new trial hearing that he and Petitioner spent over six hours drinking alcoholic beverages at two different bars before Petitioner left the last bar on foot, depressed and intoxicated at 1 a.m. on the same morning the offenses occurred. Id. The court pointed out that voluntary intoxication is not a defense to the commission of a crime. Id. (citing TEX. PENAL CODE ANN. § 8.04 (West 2003). The court concluded that, had Bruce been called as a witness, his testimony would not have benefitted Petitioner regardless of trial strategy. Id. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. There is little in Bruce's testimony that would have changed the outcome of Petitioner's trial.

### 3. Defense Strategy or Mitigating Evidence

Petitioner asserts his attorney inadequately investigated his case and his attorney's strategy was essentially ineffective. As explained by the court of appeals,

> [T]here were no eye witnesses to the offenses charged. For one reason or another, no known fingerprints were identified as being found in the apartment or on the items taken. The blood spot discovered was not tested. Entry into the apartment had been obtained from an outside balcony which was ten feet off the ground. Access to the balcony would have been difficult. Because of the "bizarre" list of items taken, the bleach thrown on clothes and the fire on the couch apparently started with vegetable oil, it was counsel's trial strategy to raise reasonable doubt by arguing to the jury that the offenses had been committed by teenagers possibly living in the apartment complex who knew when the complainant left her apartment. Counsel suggested to the jury that the stolen items were abandoned in a ditch because the teenagers knew they would be questioned at home about new possessions after it was known that the offense of burglary and arson had been committed in the nearby complainant's apartment.

Id. at *11. The court of appeals noted that just before Birdwell testified as the last witness for the State, Petitioner for the first time told his counsel that he suffered from a bipolar disorder and was

being medicated for it. Id.  The court stated counsel had no previous knowledge of the condition and was caught in mid-trial with information that his client had withheld from him.  Id.   The court concluded that Petitioner cannot be permitted under the circumstances of the case to withhold vital information from counsel, then belatedly disclose it, setting the stage for an ineffective assistance of counsel claim and possibly a new trial.  Id. at *13.  The court concluded that Petitioner failed to establish the two-pronged Strickland test.  Id.

Similarly, at the motion for new trial hearing, defense counsel testified regarding his interviews with Petitioner:

> [W]e discussed the facts, we discussed the evidence against him, we discussed his enhancement, we discussed the nature of the evidence that I felt would come in and I think what we dwelt on most and what concerned me the most were his statements to his sister.  I explained to him that in my opinion those would come in no matter what objections were arrayed against them. . . . Absent the question of bipolar disorder it wasn't unfortunately a very complex case.  And I think the time to prepare and speak to Mr. Willian was adequate.
> 1 SF 18-19 (MNT).

Petitioner denies counsel met with him before trial.

With regard to the issue of mental illness, counsel admitted he had not asked Petitioner whether he had a history of mental illness.  1 SF 19 (MNT).  Counsel testified:

> Like many people who suffer from bipolar disorder if he's not in an extreme swing of mood, you know, his affect was absolutely correct, he answered everything lucidly, cleraly[sic], he had no trouble expressing himself, but no, I didn't ask.  I didn't say, "Hey, by the way, are you suffering from any mental disorder that might have effected you at the time of the offense?"

1 SF 19 (MNT).  The state trial court denied Petitioner's motion for new trial with regard to his claim of ineffective assistance of counsel.  The Texas Court of Criminal Appeals likewise denied Petitioner's state habeas application, which included this same claim.  Having independently

reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.[2]

### 4. Double Jeopardy

Petitioner contends counsel was ineffective by failing to argue his convictions constituted double jeopardy. As mentioned above, Petitioner's burglary conviction was vacated pursuant to the double jeopardy issue raised on direct appeal. Willian v. State, Nos. 03-03-00681-CR and 03-03-00686-CR, 2005 WL 1991787 (Tex. App. – Austin Aug. 17, 2005). Accordingly, Petitioner cannot show that he has been prejudiced.

**E.   Brady Claim**

Petitioner alleges the state prosecutors should have informed counsel that he was mentally ill, specifically that he was heavily medicated and held in the psychiatric ward at the Travis County Jail prior to being transferred to TDCJ-CID and held there until a few days before trial. In his motion for new trial, Petitioner alleged that the State failed to disclose before trial exculpatory favorable evidence that Petitioner had been diagnosed as suffering from "mental illnesses, diseases, defects or disabilities" and that over eight years before trial a psychological examination had been ordered for Petitioner. Petitioner challenged in his appeal the denial of his motion for new trial. The appellate court explained that the Brady rule does not apply when a defendant is already aware of the information. Willian v. State, Nos. 03-03-00681-CR and 03-03-00686-CR, 2004 WL 742685

---

[2] Moreover, Petitioner has failed to show how he was prejudiced at the sentencing phase of trial. The range of punishment in Petitioner's case was 15-99 years in prison. Petitioner chose to be sentenced by the court as opposed to the jury, and after pleading true to the enhancement conviction, was sentenced to 25 years in prison, which is on the low end of the punishment range.

at *8 (Tex. App. – Austin 2004).  The appellate court pointed out that Petitioner was aware of his bipolar mental condition, belatedly told his counsel, and evidence was produced at trial.  Id.  The appellate court further stated that Petitioner made no claim that he did not recall the psychological examination nor he was unaware of the doctor's conclusions that Petitioner appeared to suffer from a borderline personality disorder.  Id. at *9.  The report described Petitioner as an aggressive individual who tends to act impulsively and recommended that those supervising him should confront him for "acting out."  Id. at *8.  The appellate court noted that the report did not conclude that Petitioner suffered from bipolar disorder or any mental condition save "borderline personality."  Id. at *9.  In addition the court noted the report was more damaging that favorable to Petitioner.  Id.  The appellate court determined the evidence was not material.  Id.

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), the Court held the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  To establish a Brady violation, Petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) which was favorable and (3) material to the defense.  Id. at 87, 83 S. Ct. at 1196-97; Allridge v. Scott, 41 F.3d 213, 217 (5th Cir. 1994), cert. denied, 514 U.S. 1108, 115 S. Ct. 1959 (1995).  The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  Id.  Brady encompasses evidence that may be used to impeach a witness's credibility.  Id. at 676, 105 S. Ct. at 3380.  There is no Brady violation if the defendant, using due diligence, could have obtained the information.

Williams v. Scott, 35 F.3d 159, 163 (5th Cir. 1994), cert. denied, 513 U.S. 1137, 115 S. Ct. 959 (1995) (citing United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.), cert. denied, 484 U.S. 844, 108 S. Ct. 136 (1987)).

As suggested by the state appellate court, the best person to have informed defense counsel of Petitioner's mental illness was Petitioner himself. Moreover, none of the evidence of which Petitioner complains establishes he was insane at the time of his offense or at the time of his trial.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's Brady claim.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);  Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 20th day of May, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE